IN RE the TERMINATION OF PARENTAL RIGHTS TO TEYON
D., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

QUINSANNA D., Respondent-Appellant.†
[Case No. 02–1919.]

IN RE the TERMINATION OF PARENTAL RIGHTS TO KEYON
D., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

QUINSANNA D., Respondent-Appellant.†
[Case No. 02–1920.]

Court of Appeals

*Nos. 02–1919, 02–1920. Submitted on briefs November 5, 2002.–
Decided November 26, 2002.*

2002 WI App 318

(Also reported in 655 N.W.2d 752.)

† Petition to review denied 1-17-03.

430

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carl W. Chesshir*, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas Binger*, assistant district attorney, and *E. Michael McCann*, district attorney, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Quinsanna D. appeals from the order for termination of her parental rights under Wis. Stat. § 48.415(6)[1] for failure to assume parental responsibility for her twin sons, Keyon and Teyon, following a jury trial and a dispositional hearing. She argues that at her trial, where the issue was whether

---

[1] As material to this appeal, under Wis. Stat. § 48.415(6), grounds for involuntary termination of parental rights include:

FAILURE TO ASSUME PARENTAL RESPONSIBILITY. (a) Failure to assume parental responsibility, *which shall be established by proving that the parent . . . of the child ha[s] never had a substantial parental relationship with the child.*

(b) In this subsection, "substantial parental relationship" means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider . . . factors[] including, but not limited to, whether the person has ever expressed concern for or interest in the support, care or well-being of the child, whether the person has neglected or refused to provide care or support for the child . . . .

(Emphasis added.) All statutory references are to the 1999–2000 version.

434

she had failed to establish a substantial parental relationship with her twins, the trial court erred in: (1) admitting evidence of her criminal offenses and sentences; and (2) entering a finding, based on the jury verdicts, that she had failed to assume parental responsibility for Keyon and Teyon where, she contends, the verdicts were perverse because undisputed evidence established that she had had a substantial relationship with the twins during their first two years of life.

¶ 2. Quinsanna also argues that the trial court lost competency to conduct the dispositional hearing because it adjourned the hearing for more than forty-five days following the verdicts without finding good cause for the continuance. She contends that the adjournment violated Wis. Stat. §§ 48.424(4) and 48.315(2).[2]

¶ 3. We conclude that the court correctly exercised discretion in determining that Quinsanna's criminal offenses and sentences were relevant to whether she had failed to establish a substantial parental relationship with Keyon and Teyon. We also conclude that the verdicts were not perverse and, therefore, that the

---

[2] WISCONSIN STAT. § 48.424(4)(a) provides, in part, that following a finding of grounds for termination and the resulting finding of "unfitness," the trial court "shall then proceed immediately to hear evidence and motions" regarding disposition, or "may delay making the disposition and set a date for a dispositional hearing no later than 45 days after the fact-finding hearing if . . . [a]ll parties to the proceeding agree."

WISCONSIN STAT. § 48.315(2) provides, in part, "A continuance shall be granted by the court only upon a showing of good cause in open court . . . and only for so long as is necessary, taking into account the request or consent of the district attorney or the parties and the interest of the public in the prompt disposition of cases."

trial court correctly entered the finding that Quinsanna failed to assume parental responsibility for the twins, based on the jury verdicts. Finally, we conclude that although the trial court did not explicitly find good cause to adjourn disposition for more than forty-five days following the verdicts, the parties' agreement to do so, together with the circumstances reflected in the record, established good cause for the continuance. Accordingly, we affirm.

## I. BACKGROUND

¶ 4. On October 23, 1992, Quinsanna gave birth to Keyon and Teyon. On November 1, 1994, the twins were removed from Quinsanna's care following a police raid at her residence where, in the bedroom with Quinsanna and the twins, police found marijuana, ammunition, a large amount of cash, and other drug-dealing paraphernalia. Elsewhere in the residence, which Quinsanna shared with her boyfriend, police also found cocaine and additional drug-dealing materials. Quinsanna later admitted that she was a marijuana user and that she knew her boyfriend was a drug dealer.

¶ 5. As a result of the November 1 raid, Quinsanna was arrested and ultimately convicted of possession of marijuana, possession of cocaine, and keeping a drug house. She was placed on probation.

¶ 6. On February 20, 1995, the twins were found to be in need of protection or services and were placed outside the parental home; they have continued under juvenile court jurisdiction, living in foster care ever since.

¶ 7. On November 12, 1995, approximately one year after the raid on her residence and while she was on probation for the drug offenses, Quinsanna was

arrested for altering customers' checks and stealing money from the grocery store where she worked. She admitted that she had done so to support her drug use and, on January 5, 1996, she pled guilty to theft. She was sentenced to thirty days in the House of Corrections.

¶ 8. About five months later, on June 3, 1996, Quinsanna was arrested again. She gave police a false name because she knew of a warrant for her arrest for a probation violation. She was convicted of obstructing an officer and sentenced to sixty days, concurrent with six months she received following revocation of her probation. Thus, from approximately June to December, 1996, Quinsanna was incarcerated.

¶ 9. On January 23, 2001, the State petitioned for termination of Quinsanna's parental rights to Keyon and Teyon and, in an amended petition filed seven months later, alleged that Quinsanna had failed to assume parental responsibility for them, under WIS. STAT. § 48.415(6).

¶ 10. At a pre-trial hearing, the State indicated its intention to introduce evidence of Quinsanna's criminal record—for possession of marijuana, possession of cocaine, keeping a drug house, theft, and obstructing an officer, between 1994 and 1996. The State specified that it was not seeking to introduce the mere fact and number of convictions for purposes of credibility-impeachment, *see* WIS. STAT. § 906.09,[3] but rather, that it intended to offer "the substance" of her offenses and

---

[3] WISCONSIN STAT. § 906.09, in relevant part, provides:

**Impeachment by evidence of conviction of crime** ....
(1) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime ... is admissible. The party cross-examining the witness is not concluded by the witness's answer.

sentences as "direct evidence of [Quinsanna's] failure to assume parental responsibility." At the pre-trial hearing, the prosecutor argued:

> These [criminal offenses] occurred after the birth of these children. More specifically, they occurred after the [removal] of these children [from the parental home].
>
> One of the offenses relates specifically to the reason these children were [removed]. The mother and two other individuals were charged with drug charges . . . . And I certainly think the facts of that [removal] and the facts under which the mother was charged, and the conditions of the house, etc., are certainly relevant to this case.
>
> There are two subsequent convictions . . . both of which resulted in imprisonment or jail terms, for a period of 30 to 60 days . . . . And those also, I believe, resulted in revocation of the mother's probation which she [had] received [for the drug offenses].
>
> The fact that she's committing new crimes, exposing herself, and receiving incarceration terms as a result of those crimes, I believe, is relevant to her failure to assume parental responsibility. She's prioriti[z]ing criminal activity over her children. She's placing herself in a circumstance where she is not only at risk to being removed from her children's lives, but was.

¶ 11. Defense counsel objected, arguing both that the evidence was irrelevant to whether Quinsanna had failed to assume parental responsibility, and that, even if relevant, the evidence was "too prejudicial" or "just too

---

(2) EXCLUSION. Evidence of a conviction of a crime . . . may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

highly prejudicial" because of "a danger ... that a jury ... sees somebody as a convicted felon ... and will want to punish her ... instead of ... seeing what kind of mother she was overall to these kids."

¶ 12. The trial court, agreeing that the substance of Quinsanna's convictions was not being offered "in regard to [Quinsanna's] credibility," concluded that the admissibility of the evidence was not governed by WIS. STAT. § 906.09. *See* WIS. STAT. § 906.09(1) (generally, impeachment by evidence of criminal conviction may be "[f]or the purpose of attacking the credibility of a witness"). The court also concluded that the evidence was not governed by WIS. STAT. § 904.04,[4] because, the court said, it was not being offered "to establish bad character and acting in conformity with that bad character."

---

[4] WISCONSIN STAT. § 904.04, in relevant part, provides:

**Character evidence not admissible to prove conduct; exceptions; other crimes. (1)** CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

. . . .

**(2)** OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 13. Instead, the trial court concluded that the evidence was governed by WIS. STAT. §§ 904.01, 904.02, and 904.03.[5] Reasoning that the information "clearly" was relevant, the court first commented that "[t]he drug-related offense[s] establish[ ] that [Quinsanna] wasn't fulfilling her daily parental responsibilities to these children during that period of time that she was incarcerated and it establishes why she was not doing it." The court concluded that, under what it viewed as the "strongly suggestive" language of *L.K. v. B.B.*, 113 Wis. 2d 429, 335 N.W.2d 846 (1983), and *Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 500 N.W.2d 649 (1993), "not only [is] the fact that the parent is not fulfilling . . . parental responsibility on a day-to-day basis" relevant, but "the whys of why" the parent is not doing so is germane. Further, the court explained:

[5] These statutes state:

**904.01 Definition of "relevant evidence".** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**904.02 Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

**904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

I have always viewed the failure[-]to[-]assume[-]parental[-]responsibility statute to have a qualitative and quantitative component . . . .

Did [the parent] have any relationship with this child is one analysis.

The other analysis is if [the parent has] had some relationship with the child or children[,] . . . what was the quality of that relationship? [—w]hether it was ongoing, that's particularly pertinent.

I think in analyzing the drug-related activity . . . —we've got this picture of what was going on in this house with guns and scales and drug paraphernalia and cartridges and so forth. And . . . all of that information is very pertinent in my opinion to the quality of the care, the quality of the relationship that was ongoing at the time that she did have day-to-day responsibility for the care of the children.

I also note that I don't know how you try this case in fairness to the State and arguably in fairness to the children[,] noting that . . . [the guardian ad litem] is aligned with the State[,] and frankly in fairness to the jury[,] without giving [the jury] some understanding of why and how you've become involved in the lives of these children and the lives of their family.

¶ 14. The trial court then struggled with the issue of whether the probative value of the evidence would be substantially outweighed by the danger of unfair prejudice, under Wis. Stat. § 904.03. While acknowledging that a jury could be inflamed by information of "all of this stuff about guns and drugs" and, as a result, could "just shut down at that point," the court concluded that, while certainly prejudicial, the information simply was not "unfairly prejudicial." The court explained that the evidence was "critically important" to the jury's deter-

mination of whether Quinsanna ever had a substantial parental relationship with Keyon and Teyon and, in particular, of "the quality of the relationship at the time she had day-to-day responsibility for the children."

¶ 15. The court went on to separately analyze the evidence of the non-drug offenses—theft and obstructing—under Wis. Stat. § 904.02. While noting its initial, tentative view that such evidence should be excluded, the court concluded that "when parents make decisions to engage in conduct that puts them in jeopardy of not being available to fulfill[] their responsibility to their children[,] that puts their relationship to their children at risk." That, the trial court concluded, "is relevant information for a fact-finder in determining whether they had a substantial parental relationship with a child."

¶ 16. The trial court then analyzed the theft and obstructing offenses under Wis. Stat. § 904.03, and, while commenting that it initially had expected to exclude the theft and obstructing evidence, concluded that the timing of those offenses underscored their admissibility. The court explained:

> I guess what really grabbed my attention in all of this was the proximity in time[;] at least one of these offense[s], . . . if not both[,] occurred while she still had responsibility [to] the criminal authorities for the drug involvement.
>
> . . . [T]hat puts a whole different spin on it.
>
> . . . [Y]ou are a parent who should be aware that by engaging in that type of behavior you are putting your relationship with your children at significant risk . . . .

Thus, the court allowed the State to introduce evidence of Quinsanna's criminal offenses and sentences for

possession of marijuana, possession of cocaine, keeping a drug house, theft for altering checks while working as a retail cashier, and obstructing an officer for giving a false name.

¶ 17. Additional factual background will be presented together with our discussion of the additional issues in this appeal.

## II. DISCUSSION

### A. Admissibility of Quinsanna's Criminal History

¶ 18. Quinsanna first argues that she was "unfairly prejudiced by the trial court's decision to allow evidence in regard to the substance of her criminal convictions." She contends that admissible evidence of her criminal history should have been limited to the fact and number of criminal convictions, under WIS. STAT. § 906.09, as applied to civil cases. *See Voith v. Buser*, 83 Wis. 2d 540, 545, 266 N.W.2d 304 (1978). She also maintains that "evidence of the nature" of her offenses should have been excluded as improper character evidence under WIS. STAT. § 904.04(2). We disagree.

¶ 19. We review a trial court's decision to admit or exclude evidence in a termination trial under the erroneous-exercise-of-discretion standard. *La Crosse County Dep't of Human Servs. v. Tara P.*, 2002 WI App 84, ¶ 6, 252 Wis. 2d 179, 643 N.W.2d 194, *review denied,* 2002 WI 48, 252 Wis. 2d 152, 644 N.W.2d 688 (Wis. Apr. 22) (No. 01–3034, 3035). We will uphold a trial court's decision to admit evidence if the court exercised discretion in accordance with accepted legal standards and the facts of record. *Id.* Here, we conclude that the trial

court's analysis of the legal standards was correct, and its application of those standards to the facts was reasonable.

¶ 20. While typically the admissibility of evidence of criminal history is governed by WIS. STAT. § 906.09, here the trial court correctly concluded that § 906.09 was inapplicable. The statute relates only to the use of criminal convictions for impeachment—"[f]or the purpose of attacking the credibility of a witness." WIS. STAT. § 906.09(1). In this case, however, the State was not introducing Quinsanna's convictions to impeach her credibility. Instead, as the prosecutor asserted when arguing for admission of the evidence, the drug offenses "relate[d] specifically to the reason" Keyon and Teyon were removed from Quinsanna's home, and the theft and obstructing offenses were relevant to whether Quinsanna had assumed parental responsibility for the twins:

> The fact that she's committing new crimes, exposing herself, and receiving incarceration terms as a result of those crimes . . . is relevant to her failure to assume parental responsibility. She's prioritizing criminal activity over her children. She's placing herself in a circumstance where she is not only at risk to being removed from her children's lives, but was.

We agree. Thus, we conclude that § 906.09 was inapplicable.[6]

---

[6] In her reply brief, Quinsanna insists that the State did rely on "the nature of [her] criminal convictions to attack her credibility." She notes that, in its brief to this court, the State argues to uphold the verdict in part because the jury "obviously did not find her testimony credible." Even if, however, the jury viewed Quinsanna as less credible because of her convictions,

¶ 21. Moreover, for two reasons, nothing in WIS. STAT. § 904.04 precluded admission of the evidence of Quinsanna's offenses and sentences.

¶ 22. First, except for statutorily-specified exceptions inapplicable here, *see* WIS. STAT. § 904.04(1)(a-c), "[e]vidence of a person's character or a trait of the person's character," under WIS. STAT. § 904.04(1), "is not admissible *for the purpose of proving that the person acted in conformity therewith on a particular occasion*[.]" (Emphasis added.) Clearly, in this case, the evidence was not introduced for that purpose. That is, the drug offenses and sentences were not introduced to prove that Quinsanna possessed drugs and kept a drug house; the theft and obstructing offenses and sentences were not introduced to prove that she was a thief or liar.

¶ 23. Instead, evidence of all the offenses and sentences was introduced to prove that she had failed to assume parental responsibility for Keyon and Teyon. That was fair. As the supreme court has explained, in a termination case a trial court "cannot ignore the circumstances of why" a parent "was not physically available" to assume parental responsibility when that unavailability is due not to illness, military service, or employment, but, rather "to incarceration from the wil[l]ful act of burglary," and where it was the parent's "second incarceration for that crime." *L.K.*, 113 Wis. 2d at 442. Similarly, in another termination case, the supreme court commented that it could not "ignore the

that would not render the evidence of her offenses and sentences, introduced for other purposes, inadmissible. Inevitably, in circumstances such as these, a jury may end up drawing certain credibility-inferences from evidence that was not introduced for impeachment. Significantly, Quinsanna did not request a limiting instruction under WIS. STAT. § 901.06.

445

fact that any roadblock to establishing a [parental] relationship with [the child] caused by [the parent's] arrest, bond, and conviction was produced by [the parent's] own conduct." *Ann M.M.*, 176 Wis. 2d at 685.

■

¶ 24. While Quinsanna points out that the supreme court's pronouncements in *L.K.* and *Ann M.M.* came in contexts somewhat different from those of the instant case, we deem the supreme court's reasoning no less compelling here. In those cases, courts logically considered parental responsibility for their own criminal conduct. And in *L.K.* and the instant case, courts logically considered parents' decisions to commit crimes notwithstanding what, at the very least, should have been their appreciation for the impact of their conduct on their relationships with their children. Accordingly, in the instant case, the trial court's reliance on *L.K.* and *Ann M.M.* was sound.

¶ 25. Second, under virtually the same analysis, the evidence was not foreclosed by WIS. STAT. § 904.04(2). After all, the statute provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person *in order to show that the person acted in conformity therewith.*" WIS. STAT. § 904.04(2) (emphasis added). Here, as explained, that was not the purpose. *See also Tara P.*, 2002 WI App 84 at ¶¶ 17–18 (concluding that, in termination trial under WIS. STAT. § 48.415(2), other-acts analysis under WIS. STAT. § 904.04(2) is inapplicable to determination of admissibility of evidence of bad condition of mother's home and her children, and mother's "seeming indifference" to that condition, offered to prove mother would not satisfy prerequisites to children's return).

446

¶ 26. Further, even were we to accept Quinsanna's characterization of the evidence of her criminal history as "other-acts" evidence under Wis. Stat. § 904.04(2), the evidence still would have been admissible because the statute "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Wis. Stat. § 904.04(2). Here, the evidence was offered for "other purposes" including proof of Quinsanna's "opportunity" to assume parental responsibility for Keyon and Teyon, her "intent" to do so, and the "absence" of any "mistake or accident" preventing her from doing so. *See id.*

¶ 27. Although in the trial court Quinsanna also challenged the evidence under Wis. Stat. § 904.03, she fails to do so on appeal. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (contentions not briefed are waived). Nevertheless, we note that the trial court carefully appraised the relevance of evidence under Wis. Stat. § 904.02 and, in doing so, logically distinguished the drug offenses from the theft and obstructing offenses. We also note that the court carried out the balancing-analysis required under Wis. Stat. § 904.03 and articulated reasonable bases for the admission of the evidence of all Quinsanna's offenses and sentences.

B. Perversity of the Verdicts

██

¶ 28. The jury returned verdicts unanimously answering "Yes" to the questions, "Did [Quinsanna] fail to assume parental responsibility with respect to [Keyon]

[Teyon]?" Quinsanna's counsel asked that the jury be polled but did not challenge the verdicts in any other way; he never argued that they were perverse.[7] On appeal, however, Quinsanna contends that the verdicts were perverse and, therefore, that the trial court erred in entering a finding based on them. We disagree.

¶ 29. First, it is important to clarify what Quinsanna is *not* arguing and, in doing so, to identify her precise position. Quinsanna is not arguing that the evidence was insufficient to prove that she failed to assume parental responsibility for Keyon and Teyon once they were removed from her home. Instead, she is contending that: (1) under WIS. STAT. § 48.415(6) and the corresponding jury instructions employed at her trial, failure to assume responsibility must be proven by evidence establishing "that the parent . . . ha[s] *never* had a substantial parental relationship with the child," *see* § 48.415(6)(a) (emphasis added); (2) undisputed evidence of her daily care for Keyon and Teyon, from their birth on October 23, 1992, to their removal from her home on November 1, 1994, established that, for more than two years, she had a "substantial parental relationship" with them, as defined by § 48.415(6)(b), *see* footnote 1, above; and, therefore (3) the jury could not have found that she *never* had a substantial paren-

---

[7] As the supreme court has explained, however, despite a failure to present post-verdict motions, "the appeals court has jurisdiction over a timely appeal and may in its discretion conclude that, in the interest of justice, the issues not assertable as a matter of right may nevertheless be reviewed." *Hartford Ins. Co. v. Wales*, 138 Wis. 2d 508, 511, 406 N.W.2d 426 (1987). Here, in the interest of justice, given the gravity of a termination of parental rights, we address the merits of Quinsanna's claim.

448

tal relationship with Keyon and Teyon and, accordingly, its verdicts that she failed to assume parental responsibility were perverse.

¶ 30. This court's review of a jury's verdict is narrow. *See Morden v. Continental AG*, 2000 WI 51, ¶ 38, 235 Wis. 2d 325, 611 N.W.2d 659. As the supreme court explained: "Appellate courts in Wisconsin will sustain a jury verdict if there is any credible evidence to support it. Moreover, if there is any credible evidence, under any reasonable view, that leads to an inference supporting the jury's finding, [appellate courts] will not overturn that finding." *Id.* (citations omitted). Further, in determining whether any credible evidence supports a jury's verdict, we will search the record for such supporting evidence and, "if the evidence gives rise to more than one reasonable inference," we will "accept the particular inference reached by the jury." *Id.* at ¶ 39.

¶ 31. Moreover, as we explained:

> For a verdict to be perverse, there must be something to warrant a finding that considerations which were ulterior to a reasonably fair application of the jury's judgment to the evidence, under the court's instructions, controlled or materially influenced the jury. A verdict is perverse when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair.

*Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 820, 416 N.W.2d 906 (Ct. App. 1987) (citations omitted). Here, even without questioning Quinsanna's

contention that the trial included undisputed evidence of her "daily supervision" of Keyon and Teyon before they were removed from her home, *see* WIS. STAT. § 48.415(6)(b), we reject her argument for two reasons.

¶ 32. First, WIS. STAT. § 48.415(6)(b) provides that a " 'substantial parental relationship' " consists of "the acceptance and exercise of significant responsibility" for not only the "daily supervision" of a child, but also "the acceptance and exercise of significant responsibility" for, among other things, the "protection and care of the child." *See id.* Here, the jury reasonably could have inferred that, because Quinsanna's "daily supervision" of Keyon and Teyon included her daily exposure of them to her own drug use and drug house, she had not exercised "significant responsibility" for their "protection and care." *See id.*

¶ 33. Second, while challenging the admission of her criminal history in her primary appellate argument, Quinsanna does not contend that evidence of her offenses and sentences constituted "considerations which were ulterior to a reasonably fair application of the jury's judgment to the evidence, under the court's instructions." *See Becker*, 141 Wis. 2d at 820. Indeed, she points to no such ulterior considerations of any kind. Having concluded that evidence of her criminal history was relevant and admissible, and having been presented with nothing else that arguably could constitute an ulterior consideration, we can only conclude that the verdicts were not perverse.

## C. Competency of Court to Conduct Dispositional Hearing

██

¶ 34. Finally, Quinsanna argues that the trial court lost competency to conduct the dispositional hearing because it adjourned the hearing for more than forty-five days following the verdicts without finding good cause for the continuance. Again, we disagree.

¶ 35. Immediately after the jury was polled and excused from the courtroom, the trial court asked the clerk to schedule a disposition date. The clerk, prosecutor, guardian ad litem, and Quinsanna's counsel acknowledged the forty-five day time limit between the fact-finding and disposition hearings, *see* WIS. STAT. § 48.424(4)(a), but were unable to locate a date within forty-five days when all parties could appear due, in part, to Quinsanna's counsel's trial schedule.

¶ 36. The clerk explicitly advised the parties that the dispositional date could not be scheduled outside the forty-five day limit unless all parties "agree[d] to do it." The prosecutor agreed to the continuance, and the guardian ad litem and Quinsanna's counsel "waive[d]" the forty-five day limit.[8] The clerk then scheduled the dispositional hearing approximately one week beyond what otherwise would have been the deadline. Quinsanna now argues that the trial court lost competency to conduct the dispositional hearing. She is incorrect.

---

[8] "The Children's Code contains no provision for the *waiver* of time limits, and the only provisions for delays, continuances and extensions are set forth in § 48.315, STATS." *Waukesha County v. Darlene R.*, 201 Wis. 2d 633, 640, 549 N.W.2d 489 (Ct. App. 1996) (emphasis added).

¶ 37. "[F]ailure to comply with mandatory time limits under the Children's Code may result in the loss of the circuit court's competency to proceed." *State v. April O.*, 2000 WI App 70, ¶ 5, 233 Wis. 2d 663, 607 N.W.2d 927. Where the facts are undisputed, "[w]hether the circuit court complied with the time limits and granted a continuance pursuant to WIS. STAT. § 48.315(2) . . . presents a legal question of statutory interpretation," subject to our independent review. *Id.* at ¶ 6.

¶ 38. Under WIS. STAT. § 48.315(2), "[a] continuance shall be granted by the court only upon a showing of good cause in open court . . . and only for so long as is necessary, taking into account the request or consent of the district attorney or the parties and the interest of the public in the prompt disposition of cases." Where the record "contains ample evidence to support a finding of good cause" for a continuance of a termination hearing, the trial court's "incantation of statutory phrases [is] unnecessary" for this court to conclude that a continuance, beyond what otherwise would have been the statutory time limits, does not deprive the trial court of competence. *See R.A.C.P. v State*, 157 Wis. 2d 106, 113, 458 N.W.2d 823 (Ct. App. 1990).

¶ 39. Here, although the trial court never made an explicit finding of "good cause" for the continuance, the record "contains ample evidence to support a finding of good cause." *See id.*[9] The court and the parties

---

[9] And this wholly distinguishes the instant case from *State v. April O.*, 2000 WI App 70, 233 Wis. 2d 663, 607 N.W.2d 927, on which Quinsanna relies. In *April O.*, the trial court rescheduled the dispositional hearing in a termination case beyond the

attempted to schedule the dispositional hearing within forty-five days but were unable to do so. They located the earliest date, just one week beyond the forty-five day limit, on which they all could appear. They all agreed to a continuance in order to hold the dispositional hearing on that date.

¶ 40. Further, as the State and guardian ad litem argue, not only did the parties agree to the continuance, and not only is "good cause" apparent in the record, but, factoring-in the qualification of WIS. STAT. § 48.315(1)(b), the forty-five day limit was not even exceeded. WISCONSIN STAT. § 48.315(1)(b), in part, provides:

> **Delays, continuances and extensions. (1)** The following time periods shall be excluded in computing time requirements within this chapter:
>
> . . . .
>
> (b) Any period of delay resulting from a continuance granted at the request of or with the consent of the child and his or her counsel . . . .

¶ 41. Here, the guardian ad litem for Keyon and Teyon consented to the continuance for the short period beyond the forty-five day limit. Thus, under WIS. STAT. § 48.315(1)(b), the period to which he consented would be excluded in computing the forty-five day deadline.

---

forty-five day deadline but did not do so "on the record or give any reason for rescheduling the hearing" before the time limit expired. *Id.* at ¶ 3. We concluded, therefore, that the trial court lost competency because it "did not properly extend the time limit by finding, before the time limit expired and in open court, that good cause existed." *Id.* at ¶ 11. Here, by contrast, the continuance was granted before the time limit expired, and in open court for good cause, which was apparent in the record.

*See also M.G. v. La Crosse County Human Servs. Dep't,*
150 Wis. 2d 407, 417, 441 N.W.2d 227 (1989) ("a restric-
tive interpretation of [WIS. STAT. § 48.315] is inappro-
priate," and "[a]lthough the express conditions of this
section should be carefully construed, they must be
given a reasonable reading"). Quinsanna offers no reply
to the State's and guardian ad litem's argument under
§ 48.315(1)(b). *See Charolais Breeding Ranches, Ltd. v.
FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct.
App. 1979) (unrefuted arguments deemed admitted).

*By the Court.*—Order affirmed.