**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 10, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP2331**

Cir. Ct. No. 2018TP243

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO Y.P.-T., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

D.L.,

      RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

¶1      BRASH, P.J.[1]  D.L. appeals an order of the trial court terminating his parental rights of Y.P.-T.  D.L. asserts that the court erroneously exercised its discretion in excluding evidence relating to a prior trial regarding D.L.'s parental rights of Y.P.-T., in which the State was unsuccessful in proving that D.L. had failed to assume parental responsibility of Y.P.-T.  We affirm.

## BACKGROUND

¶2      Y.P.-T. was born July 24, 2015.  Both she and her mother, S.T., tested positive for marijuana at the time of her birth.  S.T. was discharged from the hospital two days after Y.P.-T.'s birth, but Y.P.-T. remained in the hospital until August 2, 2015, due to issues with eating, jaundice, and two cardiac incidents.  S.T. only visited Y.P.-T. in the hospital twice during that time, for short periods, and never inquired as to when Y.P.-T. might be discharged.  Additionally, prior to Y.P.-T.'s birth, S.T. did not seek prenatal care, including a Rhogam shot that S.T. needed due to her being RH negative, which can lead to the death of an unborn baby.

¶3      The Division of Milwaukee Child Protective Services (DMCPS) was aware of the circumstances surrounding Y.P.-T.'s birth because S.T. had three older children[2] who were placed in foster care in January 2015 for physical abuse by S.T.  At the time Y.P.-T. was born, S.T. had not visited her other children since May 2015.  Furthermore, S.T. had been charged with a felony for intentionally causing harm to a child with regard to the abuse of her older children; she had not

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  D.L. is not the father of S.T.'s older children.

attended her sentencing hearing, resulting in an open warrant for her arrest at that time.

¶4 For these reasons, Y.P.-T. was detained at the hospital by DMCPS and placed in foster care. A petition for a Child in Need of Protection and Services (CHIPS) was filed on August 4, 2015, with a dispositional order issued on September 29, 2015, listing conditions for the return of Y.P.-T. for S.T. as well as for the "Unknown Biological Father."

¶5 S.T. initially gave the name of a different man as the potential father for Y.P.-T., but he was ruled out as the biological father shortly thereafter through DNA testing. The case manager subsequently notified D.L. in December 2015 that he could potentially be Y.P.-T.'s father. D.L. was cooperative with the DNA testing that was conducted, and he was confirmed as Y.P.-T.'s biological father in January 2016.

¶6 D.L. immediately commenced a visitation schedule with Y.P.-T. However, these visits did not go well, as Y.P.-T. cried for the majority of each visit. D.L. sometimes assumed this was because Y.P.-T. was hungry, and even though he was told it was not time to feed her, he would give her a bottle anyway, which generally resulted in Y.P.-T. vomiting the contents of the bottle.

¶7 While D.L.'s DNA results were still pending, the State filed a petition for the Termination of Parental Rights (TPR) with regard to Y.P.-T., in addition to filing a TPR petition for S.T.'s three older children. S.T. failed to appear at any of the proceedings relating to these TPR petitions, and thus the trial court entered default judgments against her. The matter regarding D.L.'s parental rights of Y.P.-T. proceeded to trial in January 2017 on the sole ground of failure to assume parental responsibility. The jury found that the State had failed to meet its

burden of proving that D.L. did not have a substantial parental relationship with Y.P.-T., and the petition was dismissed.

¶8      Subsequently, the CHIPS dispositional order for Y.P.-T. was revised in April 2017 to include conditions that D.L. was required to meet before Y.P.-T. would be placed with him.  Those conditions included controlling his drug and alcohol addictions; controlling his mental health; demonstrating proper supervision of Y.P.-T.; having age-appropriate expectations of Y.P.-T.; meeting Y.P.-T.'s medical needs; and providing safe care for Y.P.-T.

¶9      D.L. failed to meet these conditions.  He submitted only two of sixteen urine screens required to monitor his drug and alcohol issues.  He participated in a psychological evaluation to determine his mental health issues, but the doctor who performed the evaluation was "unable to provide a prognosis regarding [D.L.]'s ability to parent due to his lack of honesty and defensive response pattern which yielded invalid results."  D.L. also did not consistently attend the doctor and dentist appointments of Y.P.-T., even though he was informed of all appointments; when he did attend, he did not interact with the healthcare professionals to obtain information about Y.P.-T.'s medical needs.

¶10      Moreover, D.L. was not able to move on from supervised visitation with Y.P.-T. "due to concerns about his parenting capacity and his ability to bond with [Y.P.-T.]."  It was noted that Y.P.-T. was "distressed" during her visits with D.L.  It was further observed that D.L. "relie[d] on the therapist or his adult daughter to parent [Y.P.-T.]," and that he took "long phone calls" during his visits. He was asked to participate in parenting classes to assist him with his parenting skills, but he refused this service.

¶11 As a result, another TPR petition was filed in October 2018. In that petition, the State again alleged as a ground for termination the failure to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6). The State also included an additional ground for termination—the continuing need of protection or services of Y.P.-T., pursuant to § 48.415(2).

¶12 The matter was set on for trial. S.T. again failed to appear for any of the proceedings related to this TPR petition, and the trial court again entered a default judgment against her.

¶13 Prior to trial, D.L. submitted a motion *in limine* to allow evidence regarding the jury verdict in the first trial. However, that motion was couched in terms asserting that the jury should be instructed that D.L. "had a substantial relationship with [Y.P.-T.]" from the time of her birth until April 2017, when the revised CHIPs order was filed. The trial court pointed out that this statement was not accurate: the prior jury verdict "did not determine [D.L.] had a substantial relationship with [Y.P.-T.]," but rather found that *the State had failed to meet its burden* of proving that D.L. did *not* have a substantial parental relationship with Y.P.-T. The trial court then denied the motion, finding that the prior verdict did not meet the statutory requirements for admissible relevant evidence.

¶14 The trial was held in March 2019. The jury found that the State had established both grounds for termination. A dispositional hearing was held in July 2019, with the trial court issuing a written decision on July 29, 2019, that it was in

5

the best interests of Y.P.-T. that the parental rights of D.L. be terminated.[3]  This appeal follows.

## DISCUSSION

¶15    D.L. argues that the trial court's decision to exclude the evidence regarding the jury verdict in the first trial was erroneous because that evidence is highly relevant.  "We review a trial court's decision to admit or exclude evidence in a termination trial under the erroneous exercise of discretion standard."  *State v. Quinsanna D.*, 2002 WI App 318, ¶19, 259 Wis. 2d 429, 655 N.W.2d 752 (some punctuation omitted).  The trial court erroneously exercises its discretion "if it does not examine the relevant facts, applies the wrong legal standard, or fails to use a demonstrated rational process to reach a reasonable conclusion."  *Brown Cty. v. Shannon R.*, 2005 WI 160, ¶37, 286 Wis. 2d 278, 706 N.W.2d 269.

¶16    "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.  Generally speaking, relevant evidence is admissible, while irrelevant evidence is inadmissible.  WIS. STAT. § 904.02.  However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  WIS. STAT. § 904.03.

---

[3]  S.T.'s parental rights were also terminated.  However, she is not part of this appeal.

6

¶17    Here, the trial court found that the evidence of the prior jury verdict was not relevant. The court observed that while there may be some similar facts between the first and second trials, there would also be "new facts, supplemented facts, [and] different circumstances" in this case which had not been heard by the previous jury. Additionally, the court noted that this trial included the new claim regarding the continuing need of protections or services, which had not been litigated in the first trial. Therefore, the court found that the previous verdict was not an "issue of consequence" in the current litigation of the matter.

¶18    Furthermore, the trial court stated that there was "just a water shed" of reasons that the prior verdict should not be admitted, pursuant to WIS. STAT. § 904.03. The trial court referenced *Tammy W.-G. v. Jacob T.*, 2011 WI 30, 333 Wis. 2d 273, 797 N.W.2d 854, as the basis for permitting the State to relitigate TPR cases that it previously was unable to prove. *See id.*, ¶23 ("[A] fact-finder should consider a parent's actions throughout the entirety of the child's life when determining whether he has assumed parental responsibility."). The trial court observed that the reasoning behind that decision is that "children are not static, their lives continue, facts change, circumstances change[.]" The trial court further acknowledged that it is bound by *Tammy W.-G.* on that issue. Nevertheless, the trial court explained that there were still some "inherent concerns about fairness" in relitigating such a case that could potentially cause confusion for the jury: "[H]ow do you explain this to [the jury]? Yes, [the State] lost last time, but they get to do it again."

¶19    Additionally, the trial court noted that when parents have previously had their parental rights terminated with respect to other children, it never allows the State to inform juries about those prior cases. Therefore, based on the potential for confusion of the issues and unfair prejudice, the court found that

allowing the evidence of the prior verdict "certainly doesn't meet the [WIS. STAT. §] 904.03 criteria."

¶20 The record clearly demonstrates that the trial court, in deciding whether to admit evidence regarding the prior verdict, examined the relevant facts, applied the correct legal standards, and utilized a rational process to reach its entirely reasonable decision. *See **Shannon R.**,* 286 Wis. 2d 278, ¶37. Therefore, the court did not erroneously exercise its discretion. Accordingly, we affirm the order terminating D.L.'s parental rights of Y.P.-T.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.