COURT OF APPEALS
DECISION
DATED AND FILED

March 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2079**

STATE OF WISCONSIN

Cir. Ct. No. **2019JC59**

IN COURT OF APPEALS
DISTRICT III

IN THE INTEREST OF S. J., A PERSON UNDER THE AGE OF 18:

BROWN COUNTY,

  PETITIONER-RESPONDENT,

 V.

J. J.,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

¶1 STARK, P.J.[1] Jasper[2] appeals a dispositional order finding his son Sam a child in need of protection and services (CHIPS) and placing Sam in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

out-of-home care. Jasper argues the circuit court erred in finding that Brown County met its burden to prove by clear and convincing evidence that the County made active efforts to avoid breaking up his family, as required by the Wisconsin Children's Code and the federal Indian Child Welfare Act (the ICWA). He therefore asks that we reverse the dispositional order. We conclude that the County met its burden of proof and, accordingly, we affirm.

## BACKGROUND

¶2      Jasper and Sam are members of the Sault Ste. Marie Tribe of the Chippewa Indians. In May 2019, eight-year-old Sam, the biological son of Jasper and Anna, was removed from Anna's care pursuant to a temporary custody order. Soon after, the County filed a CHIPS petition. The removal and subsequent petition were based upon concerns regarding Anna's sobriety and her homelessness at the time, Sam's truancy at school, and Jasper's unavailability to care for Sam due to Jasper's incarceration.[3] Specifically, the petition alleged that Sam was not being provided the "necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger [his] physical health."

---

[2] For ease of reading, we refer to the appellant and his associated family members in this confidential matter using pseudonyms, rather than their initials.

[3] Petitions were also filed for the removal of several of Sam's siblings and half-siblings (referred to herein as his siblings). Those petitions are not before us in this appeal, and information concerning any of Sam's siblings will be mentioned only as relevant to this appeal. Sam is the last of Jasper and Anna's children to be placed in out-of-home care.

A court can order jurisdiction over "a child alleged to be in need of protection or services" if "[t]he child's parent … neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child." WIS. STAT. § 48.13(10).

¶3     The petition recognized the ICWA's applicability, and the County included in the petition a "Statement of Active Efforts" detailing the efforts the County made "to provide remedial services and rehabilitation programs designed to prevent the breakup of the Indian child's family."  *See* WIS. STAT. § 48.028(4)(d)2.  The listed efforts included: maintaining contact with the tribe and with Sam's extended family members to provide structure and support, to assure cultural connections, and to serve as placement resources; assessing Sam's health, safety and welfare in the family home; monitoring Anna's progress in treatment; facilitating visits between Anna and the children; and offering services to address Anna's alcohol and other drug abuse (AODA) issues and the children's special needs.  Jasper remained incarcerated throughout the proceedings.

¶4     After the circuit court entered an order for Sam's temporary removal from Anna's care, Sam was placed in a non-Indian foster home approved by the tribe.  Sam is diagnosed with autism, ADHD, and a cognitive disability, and he has high care needs due to these diagnoses.

¶5     In March 2020, Anna entered a no-contest plea to the CHIPS petition.  Jasper entered a denial and a demand for a jury trial.  In July 2020, the County filed a motion for summary judgment, arguing that there were no genuine issues of material fact concerning whether Sam was a child in need of protection or services, and that the County was entitled to judgment as a matter of law.  The County argued that Jasper "was incarcerated and also unable to provide necessary care, medical care, and shelter" for Sam.

¶6     In August 2020, the circuit court granted the County's summary judgment motion in a written decision, concluding that Jasper "meets the very definition of [WIS. STAT.] § 48.13(10)."  The court explained that "[t]here is no

way [Jasper] can meet the needs of [Sam] or fulfill his parental responsibilities while incarcerated…. [Jasper] has been incarcerated since the beginning of the filing[] of th[is] petition[] and continues to [be incarcerated to] this date." The court found Sam to be a child in need of protection and services.

¶7    The circuit court held a dispositional hearing in January 2021, at which the County called Nathan Blohm, the County's ongoing case manager, and Amanda Gil, a tribal representative from Anishnaabek Community and Family Services. Jasper also testified.

¶8    Blohm testified that he was employed by the County and had been assigned to Jasper's family's case since November 2019. Blohm stated that the County was requesting that Sam's siblings be returned to Anna's home, but that Sam remain in out-of-home placement. According to Blohm, the County made efforts to place Sam with a relative or a tribal member, but due to his higher level of care needs, Sam was placed in a non-tribal foster home approved by the tribe.

¶9    Blohm testified that throughout his work on the case, he had communicated with the tribe through letters and phone calls and he had asked for the tribe's input and assistance to ensure that the ICWA requirements were being followed. Blohm stated that at the time of the hearing, Sam saw his mother at her home four days a week and he saw his siblings on weekends at his aunt's home. Blohm also testified regarding the contact Sam had with his extended family. For example, Blohm testified that in 2019 Sam visited his great grandmother at her home for Christmas.

¶10    Blohm stated that he first had contact with Jasper in the spring of 2020. According to Blohm, Jasper had been incarcerated in a number of correctional institutions during the entire time that Blohm worked on the case,

including the Brown County Jail, Dodge Correctional Institution, the Drug Abuse Correctional Center (DACC), Oshkosh Correctional Institution, and Winnebago Correctional Center.

¶11    Blohm testified that communication with Jasper was difficult from the time he first took over the case until May 2020 because Jasper requested that his attorney be present for all meetings. Blohm also discussed additional obstacles he faced in communicating with Jasper, caused by Jasper's frequent movement between institutions and restrictive quarantining periods due to the COVID-19 pandemic. Each time Jasper moved to a new institution, Blohm testified he was required to submit a new application so that Jasper could be approved for calls and visits with Sam. Jasper refused, at various points, to sign releases to permit Blohm to speak with social workers at the institutions. Blohm further testified that although Jasper had expressed a desire for face-to-face visits with his children, due to the pandemic, no such visits were allowed at any of the institutions where Jasper was incarcerated.

¶12    As to Blohm's recent efforts and services provided to Jasper, Blohm testified that he gave Jasper envelopes to correspond with Sam, but he acknowledged that given the child's development, phone calls would have been easier than letter writing. Blohm stated that he had recently scheduled a video call to take place between Jasper and Sam the week after the dispositional hearing. At the time of the dispositional hearing, however, Jasper had not spoken with Sam in over a year. Blohm further stated that at one point Jasper used one of the envelopes Blohm provided to send Blohm an update, which showed that Jasper was able to use the prestamped envelopes provided by the County while incarcerated.

¶13 Blohm also testified that any services available through the County were offered to Jasper. He explained that it was difficult for him to provide services to Jasper due to Jasper's incarceration and that the County routinely relied on the Department of Corrections (DOC) to provide services to incarcerated parents. According to Blohm, the pandemic and Jasper's frequent movements through different institutions hindered Jasper's opportunities to engage in services. Blohm testified that Jasper was to be released within a few months, and Blohm would then "visit him[,] … check out his home, discuss services," "further assess his protective capacities in regard[] to parenting[,] and determine visitation after that."

¶14 Gil testified that she is an enrolled member of the same tribe as Sam and Jasper, and is a parent to a child in the tribe. Gil stated that she is recognized by her tribe as an expert witness qualified to speak on its behalf, and the circuit court recognized her as such pursuant to WIS. STAT. § 48.355(2)(b)6v. Gil explained that she has monitored this case since May 2019, and she has corresponded and spoken by phone with the prior and current case workers. Gil testified that she has attended "most if not all hearings in this case." When asked if she believed Sam would suffer serious physical or emotional harm if returned to his parents' care, Gil testified she believed that would be the case. Gil explained that "[Sam] has specific needs and certain behaviors that [Anna] may not be able to manage" and that Sam and his siblings have been "returned in a staggered manner in order for [Anna] to be able to not feel overwhelmed."

¶15 Gil further testified that she believed the County had made active efforts to avoid breaking up the family, but that its efforts had been unsuccessful. Gil opined "that the [County] had exhausted all services they potentially could for an incarcerated parent" and "given the circumstances of transfers and the

pandemic[,] … the [County] … appropriately provided those efforts." At the time of removal, Gil testified that there "was an extensive search to put the child[] in placement with an appropriate relative" and that the County "made efforts to reach out to the tribe immediately upon the removal." While Sam's non-Indian foster home placement was a secondary preference for the tribe, Gil testified that the tribe "has assessed the home, and given the special circumstances of this case and [Sam]'s current needs, the tribe has waived a first preference, i.e. priority placement [with an extended family member] … at this time."[4]

¶16 Jasper testified that all of the children, including Sam, lived with him from the end of the school year in 2018 until Jasper was incarcerated in October of that year. Jasper then resided in the Brown County Jail until Sam's case was filed. Jasper eventually transferred to DACC, an AODA center. He was then sent to Oshkosh Correctional Institution on May 29, 2020, due to a documented violation at DACC. Afterwards, Jasper alternated placement between Oshkosh Correctional Institution and Winnebago Correctional Center until the dispositional hearing.

¶17 Jasper testified that once he was in the prison system, he was able to write to Blohm on only one occasion using the prestamped envelopes Blohm had provided, which he stated were considered contraband by the DOC. In addition,

---

[4] WISCONSIN STAT. § 48.028(7)(b) requires that "[a]ny Indian child who is accepted for an out-of-home care placement … shall be placed in the least restrictive setting that most approximates a family, that meets the Indian child's special needs, if any, and that is within reasonable proximity to the Indian child's home." This statute lists the preferences for an Indian child, with the first preference being placement in a "home of an extended family member of the Indian child," and the second preference being placement in a "foster home licensed, approved, or specified by the Indian child's tribe." Sec. 48.028(7)(b)1.-2.; *see also* 25 U.S.C.A. § 1915(b)(i)-(ii) (2018). In this case, Gil explained that Sam is in a foster home approved by his tribe, which is a secondary preference for the tribe, instead of the first preference—i.e., priority placement with an extended family member.

he stated that at first he did not have Blohm's address. Furthermore, Jasper testified that the County never provided him with envelopes that were acceptable to the prison system during the entire time he was incarcerated, and that he had difficulties obtaining appropriate envelopes. Since the start of the case, Jasper testified he had only one phone call with Sam and that the call was facilitated by the prior social worker, not by Blohm. Jasper confirmed that prior to May 2020, he did not want to speak to Blohm without his attorney present. Jasper also confirmed that each time he moved to a new institution, new paperwork was necessary for Sam to be placed on his visitors list.

¶18   At the close of the evidence, the circuit court found that the County had made active efforts to prevent the breakup of the family. The court based this finding on the Statement of Active Efforts that the County had filed with the CHIPS petition, as well as Blohm's and Gil's testimony. The court found that the County "has worked with the tribe to ensure cultural factors that need to be considered via ICWA" and that "the [County] has reached out to extended family …. [and] set up communication between the child[] and … [Jasper]." It stated that "there has been programming set up for [Anna]" and noted that Jasper is a prisoner within the Wisconsin state prison system. The court further noted that both the pandemic and Jasper's frequent movement between institutions created obstacles to Jasper's contact with Sam. Finally, the court found that Sam "would have physical or emotional harm if he [were] to be returned" to Anna's home, and that it was in Sam's best interest to be placed out of the home due to his "more special needs." Jasper now appeals.

## DISCUSSION

¶19 Jasper argues that the circuit court erred by finding that the County met its burden to prove by clear and convincing evidence, that it made active efforts to avoid breaking up his family as required by the Wisconsin Children's Code and the ICWA. He therefore asks that we reverse the dispositional order.

¶20 The ICWA governs state-court child custody proceedings involving Indian children. *Kewaunee Cnty. Dep't of Hum. Servs. v. R.I.*, 2018 WI App 7, ¶12, 379 Wis. 2d 750, 907 N.W.2d 105 (2017). The purpose of the ICWA is to "protect the best interests of Indian children and to promote stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902 (2018). Wisconsin codified these minimum federal standards in WIS. STAT. § 48.028. *See* § 48.028(4)(g).

¶21 A dispositional order removing an Indian child from his or her home must be:

> supported by clear and convincing evidence, including the testimony of one or more qualified expert witnesses, that continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child under [WIS. STAT. §] 48.028(4)(d)1. and a finding that active efforts under [§] 48.028(4)(d)2. have been made to prevent the breakup of the Indian child's family and that those efforts have proved unsuccessful.

WIS. STAT. § 48.355(2)(b)6v.

¶22    The active efforts standard under WIS. STAT. § 48.028(4)(g)1. permits the circuit court to order the removal of an Indian child only where the evidence shows

> that there has been an ongoing, vigorous, and concerted level of case work and that the active efforts were made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe and that utilizes the available resources of the Indian child's tribe, tribal and other Indian child welfare agencies, extended family members of the Indian child, other individual Indian caregivers, and other culturally appropriate service providers.

Sec. 48.028(4)(g)1.

¶23    To assess whether the County made active efforts to prevent the break up of the family, the court must consider whether all of the activities listed in WIS. STAT. § 48.028(4)(g)1. were conducted.  On appeal, Jasper specifically claims that the County did not meet its burden to prove it did "*everything it can* (e.g., employ '*[a]ll* [available] family preservation strategies') to keep an Indian family intact," pursuant to WIS. STAT. § 48.028(4)(g)1.e.    That statutory subsection requires that the County offer or employ "[a]ll available family preservation strategies" and that the County request involvement of the Indian child's tribe "to identify those strategies and to ensure that those strategies are culturally appropriate to the Indian child's tribe."  Sec. 48.028(4)(g)1.e.

¶24    Interpreting the ICWA and applying it to a given set of facts presents a question of law subject to de novo review.  ***Monroe Cnty. Dep't of Hum. Servs. v. Luis R.***, 2009 WI App 109, ¶15, 320 Wis. 2d 652, 770 N.W.2d 795.  Whether the evidence was sufficient to support a fact finder's decision also presents a question of law that we review independently.  *See **Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶17, 333 Wis. 2d 273, 797 N.W.2d 854; *see also **Outagamie County***

*v. Melanie L.*, 2013 WI 67, ¶88 n.25, 349 Wis. 2d 148, 833 N.W.2d 607 (stating that whether a party has met its burden of proof is a question of law that we review de novo). When the sufficiency of the evidence is challenged, we consider whether there is any credible evidence to sustain the judgment and we review the evidence in a light most favorable to it. *See St. Croix Cnty. Dep't of Health and Hum. Servs. v. Matthew D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107. We will uphold a fact finder's decision if there is any credible evidence to support it. *See State v. Quinsanna D.*, 2002 WI App 318, ¶30, 259 Wis. 2d 429, 655 N.W.2d 752. A circuit court's findings of fact will not be set aside unless the findings are clearly erroneous. WIS. STAT. § 805.17(2). "When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony." *Xiong v. Vang*, 2017 WI App 73, ¶32, 378 Wis. 2d 636, 904 N.W.2d 814 (alteration in original; citation omitted).

¶25 Jasper contends that active efforts must be provided to the entire family. He acknowledges that the County provided assistance to Anna and the children, but in essence, Jasper argues that the County more or less ignored him due to his incarceration. He asserts that to meet the active efforts standard under WIS. STAT. § 48.028(4)(g)1.e., the County was required to monitor his progress and participation in services, facilitate his contact with his children, and help him prepare to take custody of his children upon his release. Jasper asserts that the County did not facilitate his contact with Sam and did not assist him in participating in programming designed to help him become a safe and stable parent after his release.

¶26 Jasper further argues that pursuant to WIS. STAT. § 48.028(4)(g)1.e., the County was required to "invest[] in him" and had a burden to make active efforts to preserve his family "over the long haul—not just while Jasper was

11

incarcerated." According to Jasper, the County was required to actively pursue the long-term preservation of his family and to work vigorously to support Jasper as Sam's future custodial parent. Thus, he asserts that the County was required to actively work with *him* to help prepare him to be Sam's custodial parent on his release.[5]

¶27 In making these arguments, Jasper acknowledges the obstacles that the County faced in working with him. He asserts, however, that the County did not prove that it actively worked to overcome these obstacles and that "[m]ore was required to justify Sam's out-of-home placement."

¶28 Jasper, however, does not cite any authority in support of his assertion that the County was required to prove it took active efforts to preserve the family "over the long haul." Pursuant to WIS. STAT. § 48.355(2)(b)6v., the circuit court was required to determine at the time of the dispositional hearing whether the County had made active efforts to prevent Sam's removal from the family home and whether those efforts had been unsuccessful. As of that date, Jasper was unavailable to care for Sam due to his incarceration, and the record shows that Jasper would not have been available to care for Sam in his home for months thereafter. As a result, the County could make no efforts at that time to assist Jasper in preventing Sam's removal from Jasper's home.

¶29 Further, to avoid overwhelming Anna, the County staggered the return of all of the children to the family home. Sam, due in part to his higher care

---

[5] In making these arguments, we note that Jasper does not appear to argue that the County failed to make active efforts to return Sam to Anna's care; instead, his claims all relate to the County's lack of active efforts to support him in avoiding Sam's removal from his care or in assisting Sam's return to his care.

needs, is the last child in out-of-home placement. Jasper does not argue that the County failed to prove at the dispositional hearing that it made active efforts to return Sam to Anna's home.

¶30 Jasper further asserts that the County's "minimal efforts to arrange for letters and (eventually) calls were insufficient" to assist in keeping his family intact. He contends that these efforts were not an "ongoing, vigorous, and concerted level of case work," and the County did not employ all of the available family preservation strategies.

¶31 The record shows, however, that the County did provide ongoing efforts to assist Jasper, in particular, and it attempted to provide him with services despite his incarceration. Blohm testified that each time Jasper moved from institution to institution, Blohm completed the paperwork that was necessary for Jasper to visit and speak with Sam. Blohm also arranged for a video call between Sam and Jasper and he provided Jasper with envelopes so he could write to Sam. Blohm knew that Jasper used the envelopes on at least one occasion, and there is no evidence in the record that Blohm was advised that the envelopes were somehow insufficient or contraband in the institutions. Blohm further testified that upon Jasper's release, Blohm planned to visit Jasper, check out his home, discuss services, further assess Jasper's protective capacities in regards to parenting, and determine the nature and extent of Jasper's visitation with Sam at that time.

¶32 Blohm also testified that the County's efforts to provide Jasper with services were significantly hindered by the pandemic and by Jasper's frequent transfers. They were further hindered by Jasper's refusal, up until May 2020, to speak with Blohm without Jasper's lawyer being present and by Jasper's refusal at

various points to sign releases to permit Blohm to speak with the institutions' social workers. Blohm further noted that there were not many services the County could offer to an incarcerated person, and the DOC controlled the services provided to Jasper. Importantly, Gil testified that she believed the County had "exhausted all services they potentially could for an incarcerated parent."

¶33 Based upon the foregoing, we conclude that the record supports the circuit court's finding that the County met its burden to prove, by clear and convincing evidence, that the County engaged in an ongoing, vigorous and concerted level of case work, and that it made active efforts to prevent the breakup of Sam's family as required by the ICWA. *See* WIS. STAT. § 48.028(4)(g). Sam's removal from his family home pursuant to the CHIPS order complied with WIS. STAT. § 48.355(2)(b)6v.

> *By the Court.*—Order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14