COURT OF APPEALS
DECISION
DATED AND FILED

April 11, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP8**

STATE OF WISCONSIN

Cir. Ct. No. 2020TP54

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

B.L.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1     DONALD, P.J.[1]  Barry appeals an order involuntarily terminating his parental rights to his daughter, Alice.[2]  On appeal, Barry contends that:  (1) the circuit court erred in regards to the admission of Barry's criminal history; and (2) the circuit court erred when it found that it was in Alice's best interest to terminate Barry's parental rights.  For the reasons discussed below, we reject Barry's arguments and affirm.

## BACKGROUND

¶2     Alice was born on October 16, 2015.  On August 25, 2016, the Division of Milwaukee Child Protective Services (DMCPS) took physical custody of Alice due to neglect by her mother, Mary.  At the time Alice was removed from Mary's care, Barry was incarcerated.[3]  Alice was placed into a foster home where she continued to reside for approximately six years, except for a five-month period where she was reunified with her mother.

¶3     On March 9, 2020, the State filed a petition to terminate Barry's parental rights to Alice.  The petition alleged that Barry had failed to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6), and Alice remained a child in need of continuing protection or services (CHIPS), pursuant to § 48.415(2).  According to the petition, Barry had failed to meet the conditions of return, which included that he resolve his criminal cases, that he not allow

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the Respondent-Appellant, his child, and the mother of his child in this confidential matter using pseudonyms rather than their initials.

[3] According to S.S., one of the case managers involved in this case, Barry's expected date of release from custody is at the end of 2025 or the beginning of 2026.

violence in his home, and that he provide safe care for his child. In addition, the petition alleged that due to Barry's incarceration, he had not made himself available to parent or provide for Alice.

¶4     Prior to the start of the fact-finding hearing, the State filed a motion *in limine* notifying the court and the parties of its intent to introduce evidence of Barry's criminal history. In particular, the State indicated that it planned to present the substantive facts of three cases: Milwaukee County Circuit Court Case Nos. 2016CF1774, 2016CF2743, and 2016CF4259.

¶5     In the first case, No. 2016CF1774, Barry was charged with violating the sex offender registry. According to the criminal complaint, Barry was convicted of first-degree sexual assault in 1998, and on September 9, 2015, had failed to comply with the statutory sex offender reporting requirements. Barry pleaded guilty as charged.

¶6     In the second case, No. 2016CF2743, Barry was charged with nine counts: two counts of substantial battery, three counts of battery, and four counts of disorderly conduct, all as a repeater and with the domestic abuse assessment. In short, according to the criminal complaint, on January 31, 2015, Barry became upset with Mary and hit her in the face with his fist, kicked her three or four times in the face, punched her, dragged her by the hair, and shoved her into the stairs.[4] Subsequently, on October 7, 2015, nine days before Alice's birth, Barry began to accuse Mary of taking money from him. Barry then grabbed her by the neck and shoved her head into a wall. In addition, on October 10, 2015, Barry yelled at

---

[4] Mary was treated at the hospital for lacerations to her face and nose and was diagnosed with a broken tailbone.

Mary for talking about him to other people and punched her in the side of the head. Mary left, and Barry followed her to a store, where he repeatedly punched her in the head. Barry entered a guilty plea to two counts of substantial battery and three counts of battery. The other counts were dismissed and read-in.

¶7 In the third case, No. 2016CF4259, Barry was charged with three counts of felony intimidation of Mary, all as a repeater with the domestic abuse assessment. According to the complaint, Barry knowingly and maliciously attempted to prevent or dissuade Mary from going to court. Barry entered a plea to one count, and the other two counts were dismissed and read-in.

¶8 A four-day jury trial took place. Relevant to this appeal, during the testimony of case manager S.S., over the objection of Barry, the State moved into evidence the certified criminal court record, the certified criminal complaint, and the certified judgment of conviction for each of the three cases. In particular, S.S. testified that in case No. 2016CF1774, while Alice was in utero, Barry knowingly failed to comply with the sex offender registry reporting requirements. In regards to case Nos. 2016CF2743 and 2016CF4259, parts of the complaints were read and published to the jury.[5]

¶9 Outside the presence of the jury, the circuit court found that Barry's criminal history from the time of Alice's conception onward was relevant because it put Barry at risk of being removed from her life as a result of incarceration.

---

[5] We note that the complaint in case No. 2016CF2743 states in part that Mary "indicated that [Barry] was selling crack cocaine from the apartment and wanted her to answer the door and complete a sale for him." After this sentence of the complaint was read to the jury, the circuit court interjected and instructed the jury that "[Barry] has not been convicted of any drug-related offenses that are going to be talked about in this trial. So that part of the complaint you should not accept as being true."

Additionally, the court stated that the domestic violence offenses were relevant to Barry's safety as a parent, the reasons for removal, and the conditions for return. The court stated that:

> These are the central facts of this case. These are why [Alice] was not considered safe in [Barry's] care. The in utero and early childhood domestic violence is a hazardous living environment that he exposed [Alice] to which is central to the failure to assume ground.

The court further found that because Barry had pleaded guilty he "effectively … admitted the allegations" and it was "fair game" for the State to go through the details that led to the criminal convictions.

¶10    During deliberations, the jury requested "[c]ase manager notes, all evidence and Exhibits 1 through 30." The circuit court responded that no case manager notes were admitted into evidence and provided select exhibits. This did not initially include any of the criminal document exhibits as the State indicated that they needed to be redacted before being sent to the jury.

¶11    With respect to case Nos. 2016CF1774 and 2016CF2743, the State redacted the references in the criminal complaints to the 1998 sexual assault of a child conviction. In regards to the criminal complaint for case No. 2016CF4259, only the first two pages, which primarily included the charges, were sent to the jury.

¶12    Barry's trial counsel agreed with the State's redactions, but argued that the entire probable cause section for case No. 2016CF2743 should be excluded because it re-emphasized the wrongful conduct that Barry engaged in against Mary. The circuit court denied the request stating that the probable cause section had been read to the jury and there was no reason the jury could not have it

in written form. Additionally, the court stated that the "evidence is what the evidence is," and if the court omitted it, it would be "de-emphasizing part of the State's case."

¶13    Ultimately, the jury found that the State had proven both grounds—continuing CHIPS and failure to assume parental responsibility. Based on the jury's verdict, the circuit court found that Barry was unfit.

¶14    At the dispositional hearing, the State called Alice's foster mother and the current case manager, O.D. Barry testified and also presented testimony from his half-brother, A.F., and his mother, C.L. Of note, A.F. testified that he was willing to parent Alice and Barry testified that he believed A.F. would be best for Alice since A.F. had children of his own around her age and showed good parenting skills. Likewise, C.L. testified that A.F. appeared to be a wonderful parent to his children and his home would be safe and suitable for Alice. After the conclusion of testimony, the circuit court determined that it was in Alice's best interests to terminate Barry's parental rights.

¶15    This appeal follows. Additional relevant facts are referenced below.

## DISCUSSION

¶16    On appeal, Barry contends that: (1) the circuit court erred in regards to the admission of Barry's criminal history; and (2) the circuit court erred when it found that it was in Alice's best interest to terminate Barry's parental rights. We address each issue in turn.

### I.    Admission of Criminal History

¶17    Barry first contends that the circuit court erroneously admitted the certified criminal complaints because the circuit court did not properly create a record on how its discretion was exercised and Barry did not adopt the admissions as his own.  We disagree.

¶18    A circuit court's decision to admit evidence is reviewed for an erroneous exercise of discretion.  *State v. Quinsanna D.*, 2002 WI App 318, ¶19, 259 Wis. 2d 429, 655 N.W.2d 752.  "We will uphold a [circuit] court's decision to admit evidence if the court exercised discretion in accordance with accepted legal standards and the facts of record."  *Id.*

¶19    To start, here, the circuit court properly made a record.  The court found that Barry's criminal history was relevant to the failure to assume parental responsibility ground because it put Barry at risk of being removed from Alice's life as a result of incarceration.  *See Tammy W.-G. v. Jacob T.*, 2011 WI 30, ¶23, 333 Wis. 2d 273, 797 N.W.2d 854 (stating that a fact-finder should consider the parent's actions throughout the entirety of the child's life when determining whether a parent has assumed parental responsibility).  The court also specifically stated that the domestic violence offenses were relevant to whether Alice was safe in Barry's care.  The court explained that the domestic violence created a hazardous living environment, which is "central" to the question of whether Barry failed to assume parental responsibility.  *See id.*, ¶22 (stating that a fact-finder may consider whether a parent exposed his or her child to a hazardous living environment when determining whether a parent has assumed parental responsibility).

7

¶20    In addition, the circuit court found that the factual allegations against Barry were not hearsay because they were admissions by a party opponent. An admission by a party opponent is a statement offered against a party and is a "statement of which the party has manifested the party's adoption or belief in its truth[.]" WIS. STAT. § 908.01(4)(b)2. The certified criminal court record for each of the three cases at issue reflects that Barry entered a plea and stipulated to the facts of the complaints. This evinces an unambiguous and knowing adoption of the facts. *See* ***State v. Rogers***, 196 Wis. 2d 817, 831-32, 539 N.W.2d 897 (Ct. App. 1995). Thus, the circuit court did not err in concluding that the facts in the complaints were admissible.[6]

¶21    Second, Barry contends that he was denied due process. In support of his argument, Barry points to parts of the criminal complaints referencing his 1998 first-degree sexual assault conviction. This information, however, was redacted from the complaints prior to sending them to the jury. As a result, this court does not discern any error in this respect.

¶22    Barry also contends that the criminal complaints, court records, and judgments of conviction contain information that had no bearing on the issues in this case. Barry alleges that the court records show that he exercised certain legal and constitutional rights, such as demanding a jury trial and negotiating pleas, and the complaints and judgments of conviction contain information about charges that

---

[6] The State also suggests that the certified criminal complaints were admissible as judicially noticed facts under WIS. STAT. § 902.01, or as exceptions to the hearsay rule under WIS. STAT. § 908.03(22). Because we conclude that the complaints were admissible under WIS. STAT. § 908.01(4)(b)2., we do not address the State's other theories. *See* ***Ehlinger v. Hauser***, 2010 WI 54, ¶66, 325 Wis. 2d 287, 785 N.W.2d 328 (stating that appellate courts should generally decide cases on the narrowest possible grounds).

were dismissed. Even if, however, this court assumes this information was irrelevant, any error in admitting it was harmless. It is unclear how this information prejudiced Barry or affected his substantial rights. *See* WIS. STAT. § 805.18(2); ***Waukesha Cnty. v. Steven H.***, 2000 WI 28, ¶57, 233 Wis. 2d 344, 607 N.W.2d 607.

¶23 Moreover, in closing instructions, the circuit court specifically instructed the jury that:

> [d]uring the trial, some reference was made to criminal behavior for which [Barry] has not been convicted. You are not to consider this as competent evidence nor are you to assume [Barry] has actually committed those acts. You may not consider this information in any way when reaching your verdicts.

This instruction presumptively cured any potential prejudice to Barry with respect to criminal behavior for which he was not convicted. *See **State v. Jennaro***, 76 Wis. 2d 499, 508, 251 N.W.2d 800 (1977) (stating that limiting instructions "are presumed to cure the prejudicial effect of erroneously admitted evidence").

¶24 Third, Barry argues that the fact-finding hearing was "saturated" with the fact that there was a no-contact order; however, the no-contact order was only in effect as a condition of bail and no bail was posted. The plain language of the order, however, reflects that there was a standalone no contact order. The no contact order states that "It is ordered, effective immediately, <u>and also</u> as a condition of release in this case, the defendant have absolutely no contact" with Mary (capitalization omitted; underlines in original.). Thus, contrary to Barry's argument, the no contact order was in effect regardless of whether bail was posted, and we discern no error in this respect.

¶25 Finally, Barry contends that the circuit court erroneously exercised its discretion by saying "blanketly that all the evidence should be available to the jury." The circuit court, however, did not allow the jury to view all of the exhibits. Further, in regards to the criminal complaints that were submitted to the jury, as stated above, certain portions of the documents were redacted. Therefore, for all of the reasons above, we reject Barry's arguments that the circuit court erroneously exercised its discretion during the fact-finding hearing.

## II. Decision to Terminate Parental Rights

¶26 Barry contends that terminating his parental rights was an erroneous exercise of discretion.

¶27 The circuit court's decision whether to terminate parental rights is discretionary. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). When assessing whether termination is warranted, the circuit court is required to focus on the child's best interests. WIS. STAT. § 48.426(2); *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶28, 255 Wis. 2d 170, 648 N.W.2d 402. To make this decision, the court considers, but is not limited to, the following factors:

> **(a)** The likelihood of the child's adoption after termination.
>
> **(b)** The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> **(c)** Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> **(d)** The wishes of the child.
>
> **(e)** The duration of the separation of the parent from the child.

10

> **(f)** Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶28 Barry admits that the circuit court addressed each of the required factors, but essentially argues that the evidence should be weighed differently. However, the weight and the credibility of the evidence are solely for the circuit court to determine. *See **Bonstores Realty One, LLC v. City of Wauwatosa***, 2013 WI App 131, ¶6, 351 Wis. 2d 439, 839 N.W.2d 893. Here, the circuit court assessed the credibility of the witnesses, and determined that termination was in Alice's best interests based on each of the six factors set forth in WIS. STAT. § 48.426(3).

¶29 The circuit court found that Alice was very likely to be adopted and the foster parents had continually demonstrated their commitment to her. The court observed that Alice was 10 months old at the time of her removal and was currently six-years old and had some behavioral issues.

¶30 The court further found that Alice did not have a substantial relationship with Barry or any extended paternal family members and would not be harmed by severing those relationships. The court stated that Alice was too young to understand the proceedings and make a decision, but she was certainly bonded to the foster parents and her siblings in the home. Additionally, given that the foster parents' home was the only home that she has a conscious memory of,

the court stated that "certainly I could infer that if she could express her wishes, she would want to stay where she is."[7]

¶31 Finally, the circuit court found that Alice had been separated from Barry the majority of her life, and that termination would enable her to enter into a more stable and permanent family relationship. The court stated that neither A.F. nor Barry seemed to have any appreciation for Alice's needs or understanding of child development.

¶32 Therefore, the record reflects the circuit court properly weighed the evidence and considered the necessary factors in determining that termination of Barry's parental rights was in the best interests of Alice.

*By the Court.*—Order Affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] We note that Barry contends that there was no evidence of the wishes of Alice, but only the preference of the Guardian ad Litem who recommended that Barry's parental rights be terminated. This however overlooks that Alice's foster mother testified that Alice wished to be adopted and that she calls their residence "home."