# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP402**

STATE OF WISCONSIN

Cir. Ct. No. 2021TP16

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M. J. O.,
A PERSON UNDER THE AGE OF 18:

C. T. L. AND B. K. K.,

PETITIONERS-RESPONDENTS,

V.

M. L. K.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Affirmed.*

¶1 STARK, P.J.[1] Melissa[2] appeals from an order terminating her parental rights (TPR) to her six-year-old daughter Mary. She argues that she is entitled to a new trial for two reasons. First, the circuit court erroneously exercised its discretion by admitting irrelevant evidence regarding Mary's best interest during the grounds phase of the proceedings. Second, the court erred by failing to take judicial notice of a COVID-19 stay-at-home order that Melissa claims supported her good cause defense to the issue of whether she abandoned Mary.[3] We conclude that any error on the part of the court was harmless. Accordingly, we affirm.

## BACKGROUND

¶2 In May 2021, Cynthia and Bill, Mary's paternal grandparents, petitioned to terminate Melissa's parental rights to Mary,[4] who had lived with

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply." WIS. STAT. RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we refer to the appellant, the child, and the associated family members in this confidential matter using pseudonyms, rather than their initials.

[3] Melissa also argues that the circuit court erroneously exercised its discretion by refusing to admit evidence regarding post-petition events that she claims were relevant to the issue of whether she failed to assume parental responsibility for Mary. As we note below, we decide this case on the issue of abandonment (six months) only, and, therefore, we need not address this issue.

[4] Cynthia and Bill also petitioned to terminate the parental rights of Richard, Mary's biological father. Richard voluntarily terminated his parental rights, and his rights are not at issue in this appeal.

them for four years. The TPR petition alleged grounds of abandonment (six months) under WIS. STAT. § 48.415(1)(a)3. and failure to assume parental responsibility under § 48.415(6).

¶3     A three-day jury trial was held during the grounds phase of the case during which nine witnesses testified, including Cynthia, Bill, and Melissa. The following evidence was produced at trial. Mary was born in July 2015 to Melissa and Richard. Richard was incarcerated at the time of Mary's birth, and he remained incarcerated throughout the TPR proceedings. Melissa initially cared for Mary with the help of her mother, Natalie, and Cynthia.

¶4     Melissa admitted to using illegal substances from 2016 to 2021, and experiencing homelessness and unemployment during that time. As a result of Melissa's drug use, and pursuant to a child in need of protection or services (CHIPS) order, Mary was placed with Natalie at the age of fifteen months. In 2017, Mary was removed from Natalie's care and she has since resided with Cynthia and Bill. In 2018, Cynthia and Bill were granted guardianship over Mary.

¶5     Cynthia testified that Mary exhibited a variety of concerning behaviors when she began living with Cynthia and Bill full-time. Mary did not like to be touched, displayed aggressiveness, would bite, would throw her toys and clothes, would hit her head against the wall, and was frequently angry. Mary was also "deathly afraid of men."

¶6     Mary's pediatrician, Dr. Jeffrey LaMont, testified that he noticed Mary's concerning behavior and considered her to be "very apprehensive" and "anxious" to a degree that was not ordinary. He noted, however, that Cynthia's presence did comfort Mary. In August 2017, LaMont wrote a letter to the Marathon County Department of Social Services recommending the suspension of

any visitation between Mary and Melissa and further recommending that Cynthia have exclusive care and custody of Mary.

¶7 During the guardianship, Melissa was allowed supervised visitation with Mary. The visitation was organized between Melissa and Cynthia, and was scheduled to occur at a local McDonald's or the public library. Melissa frequently failed to show up to her scheduled visitation, and she last visited with Mary in November 2019. Melissa then missed a scheduled visit with Mary in December 2019, and Cynthia did not hear from Melissa until Mary's birthday in July 2020. At that time, Melissa texted Cynthia and asked if she could drop off gifts for Mary, but Cynthia did not respond, and Melissa did not drop off any gifts. Melissa again attempted to contact Cynthia over Facebook Messenger in September 2020, and again, Cynthia did not respond. After the TPR petition was filed in May 2021, Melissa attempted to contact Cynthia only once, in December 2021.

¶8 At the time of trial, Mary was in kindergarten. Melissa had never contacted any of Mary's teachers or anyone at her school. Melissa took Mary to a doctor's appointment only once in Mary's life, and either Natalie or Cynthia accompanied Mary to all of her other doctor appointments. Melissa did not voluntarily pay child support over the years, and she often relied on Natalie and Cynthia to purchase diapers and food for Mary while Mary was in her care.

¶9 The jury found that both of the asserted grounds existed for termination of Melissa's parental rights—i.e., abandonment and failure to assume parental responsibility. The circuit court then found Melissa unfit. After a dispositional hearing, the court found that it was in Mary's best interest to

terminate Melissa's parental rights. Melissa now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

### I. Evidence regarding Mary's Best Interest

¶10 During the jury trial, Bill was asked whether termination of Melissa's parental rights was "good for [Mary]." Melissa did not object to the question. During Cynthia's subsequent testimony, the circuit court overruled Melissa's objection to the same question. In response to this question, both Cynthia and Bill testified regarding the stability they provided for Mary and the improvement in Mary's behavior since she began living with them. Cynthia testified that Mary "is in a stable, happy, loving home" and that Mary "is doing so well in school" and she attends gymnastics and piano lessons. Cynthia also testified that Mary did not know Melissa and that if Mary was "moved again," that would "turn [Mary's] whole world upside down." Bill testified that the negative behaviors Mary exhibited when she first stayed with them—such as hitting herself or waking up and needing to be comforted at night—returned after Melissa's visitation with Mary.

¶11 Melissa asserts the above evidence was irrelevant to the issues that the jury was required to address when considering whether grounds existed to terminate her parental rights based on abandonment and failure to assume parental responsibility. Melissa contends that this evidence was relevant only during the

dispositional phase of the proceedings and that the circuit court therefore erroneously exercised its discretion by admitting it during the grounds phase.[5]

¶12     A termination of parental rights proceeding involves a two-step procedure. *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A. B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The first step is the grounds phase, which "consists of a fact-finding hearing" where the "burden is on the petitioner to demonstrate by clear and convincing evidence that grounds for termination exist." *Brown Cnty. Dep't of Hum. Servs. v. Brenda B.*, 2011 WI 6, ¶32, 331 Wis. 2d 310, 795 N.W.2d 730. "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." WIS. STAT. § 48.424(4). "The second step is the dispositional phase," during which "the best interests of the child are paramount." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768. The parent is entitled to present relevant evidence to the issue of disposition. WIS. STAT. § 48.427(1). "At the dispositional hearing, the court may enter an order terminating the [parent's] parental rights" or "it may dismiss the petition if it finds the evidence does not warrant the termination of [the parent's] parental rights." *Julie A. B.*, 255 Wis. 2d 170, ¶28.

---

[5] As previously noted, the jury concluded both that Melissa had failed to assume parental responsibility and that she had abandoned Mary. We decline to address issues that Melissa raises related to the failure to assume parental responsibility ground because the evidence was sufficient for the jury to find that Melissa abandoned Mary, and only one ground is required for a TPR. *See Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856 (stating that the petitioner must prove that one or more of the statutory grounds for a TPR exist); *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (holding that an appellate court need not address every issue raised by the parties when one issue is dispositive).

¶13 We review a circuit court's decision "to admit or exclude evidence in a termination trial" for an erroneous exercise of discretion. ***State v. Quinsanna D.***, 2002 WI App 318, ¶19, 259 Wis. 2d 429, 655 N.W.2d 752. We will uphold "a circuit court's decision to admit or exclude evidence if the decision ha[d] 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of the record.'" ***La Crosse Cnty. Dep't of Hum. Servs. v. Tara P.***, 2002 WI App 84, ¶6, 252 Wis. 2d 179, 643 N.W.2d 194 (citation omitted). "An appellate court will generally look for reasons to sustain a discretionary determination" and can "independently search the record to determine whether additional reasons exist to support the [circuit] court's exercise of discretion." ***Obey v. Halloin***, 2000 WI App 99, ¶17, 235 Wis. 2d 118, 612 N.W.2d 361.

¶14 "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Melissa asserts that the testimony pertaining to why termination of her rights would be "good" for Mary "had no tendency to make any facts as to whether [Melissa] abandoned [Mary] more or less probable." Melissa therefore contends that the circuit court erroneously exercised its discretion by permitting Cynthia and Bill to testify about Mary's best interest and by failing to make a record as to why this evidence was relevant.

¶15 Cynthia and Bill respond that Melissa has forfeited this issue by failing to object when Bill, the first witness to testify, was asked why he believed termination of Melissa's rights would be good for Mary. Because Melissa did not object to the same evidence presented by Bill, Cynthia and Bill contend that Melissa forfeited her ability to challenge Cynthia's later response to the same

7

question.  Cynthia and Bill cite *Gedicks v. State*, 62 Wis. 2d 74, 83-84, 214 N.W.2d 569 (1974) (citation omitted), where our supreme court stated: "When objection is not made to the initial introduction [of evidence] or, at least, when the objectionable nature of the testimony is apparent, the right to subsequently object to the introduction of such testimony has been lost."

¶16    "[O]bjections to the admissibility of evidence must be made promptly and in terms which inform the circuit court of the exact grounds upon which the objection is based." *State v. Hartman*, 145 Wis. 2d 1, 9, 426 N.W.2d 320 (1988).  Typically, a failure to object "constitutes a forfeiture of the right on appellate review." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.  If the "values protected by the forfeiture … rule" would not be advanced by applying that rule in a given case, a court may disregard the forfeiture and "reach the merits of the issue presented." *See id.*, ¶38.

¶17    We agree that Melissa forfeited her objection to Bill's and Cynthia's testimony about whether the TPR would be beneficial to Mary.  Nevertheless, we will ignore the forfeiture and address the merits of this issue because the parties have briefed the issue and there are no factual issues to be resolved.  Further, Melissa did object to Cynthia's later testimony in response to the question about whether the TPR would be "good for Mary," and the circuit court had the opportunity to address the issue.

¶18    For purposes of our decision, we assume without deciding that the circuit court erroneously exercised its discretion by allowing Bill and Cynthia to testify about whether the TPR would be "good for Mary" because such evidence was irrelevant to the issue of abandonment during the grounds phase of the

proceedings. We nonetheless, conclude that any error on the court's part in permitting that testimony was harmless.

¶19 For an error to be harmless, it must not affect "the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial." WIS. STAT. § 805.18(2). Stated differently, an error does not affect the substantial rights of a party unless there is "a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Evelyn C.R.*, 246 Wis. 2d 1, ¶28. "If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless." *Id.*

¶20 To prove the abandonment (six months) ground for a TPR, the petitioner must prove that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." WIS. STAT. § 48.415(1)(a)3. Abandonment is not established, however, if the parent can prove they "had good cause for having failed to visit … [or] communicate with the child throughout the [applicable] time period." *See* § 48.415(1)(c)1.-2. Here, the jury was asked if Mary was left by Melissa with a relative or parent; if Melissa knew or could have known of Mary's whereabouts; and if Melissa failed to visit or communicate with Mary for a period of six months or longer. Additionally, the jury was asked four questions regarding whether Melissa had good cause for failing to communicate or visit with Mary or Cynthia during that time period. The jury answered "yes" to the first three questions, and "no" to the subsequent questions.

¶21 The undisputed evidence elicited at trial from Melissa, Cynthia, and Bill showed that Melissa had abandoned Mary. Melissa had left Mary with

Cynthia in the past, she knew that Mary was transferred to Cynthia's care in 2017, and she also knew that Cynthia and Bill had been granted guardianship over Mary in 2018. Melissa did not see or communicate with Mary from December 21, 2019, to July 18, 2020, and provided no evidence explaining her failure to do so. Cynthia's and Bill's testimony as to how Mary's best interest was served by the TPR would not have affected the jury's answers to the verdict questions regarding whether Melissa abandoned Mary or whether she had good cause for failing to visit or communicate with Mary or Cynthia. Therefore, admission of Bill's and Cynthia's testimony regarding Mary's best interest does not undermine our confidence in the jury's verdict. Accordingly, any error on the part of the circuit court in allowing this best interest testimony was harmless.

## II. Judicial Notice of Stay-at-Home Order

¶22 On the third day of trial, Melissa requested that the circuit court take judicial notice of the governor's "COVID[-19] stay-at-home order" in support of an affirmative defense that she had good cause for her failure to visit or communicate with Mary or Cynthia. Specifically, Melissa argued that because the stay-at-home order was in effect during the time of at least one of the periods when she was claimed to have abandoned Mary, that order provided evidence of a factor beyond her control that precluded or interfered with her visitation of Mary, and provided good cause for her failure to do so. She contends that the court erroneously exercised its discretion by denying her request because the court was required to take judicial notice of the stay-at-home order pursuant to WIS. STAT. § 902.01(4).

¶23 WISCONSIN STAT. § 902.01(4) requires a judge or court to "take judicial notice if requested by a party and supplied with the necessary

information." There is no dispute that the stay-at-home order was the type of evidence that the circuit court was required to take judicial notice of pursuant to § 902.01(4). We therefore assume, without deciding, that the court erred by failing to take judicial notice of the order. We conclude, however, that such error was harmless because regardless of whether the court took judicial notice of the stay-at-home order, it properly exercised its discretion in excluding evidence of the order as it was irrelevant to Melissa's good cause defense.

¶24 Specifically, the circuit court refused to take judicial notice of the order because Melissa did not present any evidence that the stay-at-home order caused her failure to visit or communicate with Mary or Cynthia. Thus, the court correctly found that the stay-at-home order was irrelevant as, under the circumstances here, the existence of the order did not provide a basis for the jury to determine that Melissa had good cause for failing to visit or communicate with Mary or Cynthia. Consequently, even if the court erred by failing to take judicial notice of the stay-at-home order, it nevertheless properly exercised its discretion in refusing to admit the order as evidence in support of Melissa's good cause defense.

¶25 We further conclude that judicial notice of the stay-at-home order would not have affected the outcome of the trial because, in her closing argument, Melissa did mention COVID-19 as an obstacle to her visitation with Mary. Her counsel argued that Melissa last saw Mary in November 2019 and then "in March of 2020, COVID[-19] hit" and Melissa "never got to see her daughter again." The jury was therefore aware of COVID-19 as a potential obstacle to Melissa's visitation with Mary. The jury nevertheless found that Melissa failed to prove that she had good cause for failing to communicate with Mary or Cynthia from

December 21, 2019, to July 18, 2020, and, accordingly, found that she had abandoned Mary.

## III. Cumulative Error

¶26    Melissa acknowledges that the claimed evidentiary errors are subject to a harmless error analysis. She nonetheless argues that the cumulative effect of the circuit court's errors "worked to the advantage of [Cynthia and Bill] and to the detriment of [Melissa]." These errors, Melissa claims, "allowed [Cynthia] to persuade the jury with evidence it should not have heard, and precluded [Melissa] from presenting the jury with evidence it properly should have heard." Thus, she claims that absent the cumulative effect of the court's errors, the outcome of the proceedings would have been different. Melissa asserts that the aggregated errors were not harmless because Cynthia's and Bill's testimony "tainted" the jury's ability to fairly assess all subsequent evidence, and the evidence within the record could support an alternative verdict in her favor.

¶27    "The cumulative effect of several errors may, in certain instances, undermine a reviewing court's confidence in the outcome of a proceeding." *State v. Harris*, 2008 WI 15, ¶110, 307 Wis. 2d 555, 745 N.W.2d 397. Melissa's claimed errors in this case, however, do not meet that standard. As noted above, the evidence showing that Melissa abandoned Mary was virtually undisputed, and there was no evidence showing that Melissa had good cause for failing to visit or communicate with Mary or Cynthia for six months. Given the strength of Cynthia's and Bill's case, there is no reasonable possibility that the circuit court's alleged errors—whether considered individually or cumulatively—contributed to the jury's verdict on the abandonment ground.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.